THE STATE, DEFENDANT IN ERROR, v. ADOLPH BERT-
CHEY, PLAINTIFF IN ERROR.

Argued March 15, 1909—Decided June 14, 1909.

1. Any person who hears the call of a police officer for assistance in
the arrest of a fleeing criminal may respond to that call and aid
in the arrest. without waiting for information as to the offence
which the criminal has committed.

2. It is a settled rule of criminal law in this state that a trial judge
may express to the jury his own views with respect to the value
of the testimony and the inferences to be drawn from it.

On error to Ocean Oyer and Terminer.

For the plaintiff in error, *Robert P. Bell* and *V. Claude Palmer.*

For the state, *Theodore J. R. Brown,* prosecutor of the pleas, and *Edmund Wilson,* attorney-general.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.   The defendant below was indicted for and convicted of the murder of one Frank Janowski.   The record and the proceedings at the trial are before this court for the purpose of reviewing certain rulings of the trial court on questions of evidence and certain instructions delivered by the court to the jury.

The case made by the state showed that the killing of Janowski occurred under the following circumstances:  About nine o'clock on the night of December 29th, 1908, the defendant burglariously entered one of the rooms of the Hotel Manhattan, in the village of Lakewood, by means of a ladder placed on the outside of the building, and stole some of the property belonging to a guest of the hotel.   As he was attempting to enter another room by the same means he was discovered by people in the neighborhood who called "Thief" and "Police."   As soon as he heard the outcry he dropped from

the ladder and started to run away. A hue and cry was immediately raised, and he was soon pursued by a large crowd of people, among whom were two police officers, who, from time to time, hallooed "Catch that man," and "Catch the thief." During the course of the pursuit the fleeing man and the officers exchanged several shots, but no one was hit. Two or three of these shots were fired by the defendant in close proximity to the Bartlett inn, where Janowski, the deceased, was employed as bartender, together with one Coates. Both of these men were in the barroom at the time, and when the shots were fired they looked at one another and then ran out into the street. Coates, while on the street, heard cries of "Catch the thief," or "Catch the man," he was uncertain which. These cries came from the officers, and Janowski was only about ten to twenty feet away from them at that time. In a few minutes both Coates and Janowski went back into the hotel. Janowski immediately got his hat, left the hotel again and joined in the pursuit of the defendant. After following him some distance he overtook him, and as he laid hands on him, or was about to lay hands on him, he was shot down and killed.

The rulings on evidence, which are submitted to us for review, were refusals by the trial court to exclude the testimony of witnesses showing the burglarious entry and theft at the Hotel Manhattan by the defendant, and the subsequent hue and cry after him. It is somewhat difficult to understand from the argument of counsel why he conceives that this testimony should have been excluded. He says that it could not be other than prejudicial to the defendant, but he can hardly mean that this fact would require its exclusion, for all testimony which tends to convict a person of the crime for which he is being tried is prejudicial to him. He further says that, to justify its admission, it was necessary for the state to first show that the deceased knew of the offence which the defendant had committed, or that he was specially directed or commanded by a police officer to aid in the defendant's capture. He cites no authority in support of this assertion, and it is manifestly unsound. The law does not require that a citizen,

before answering to the call of a police officer for assistance in the arrest of a criminal, shall first be informed of the particular crime which the defendant has committed, nor does it require that the citizen shall be specially selected by the officer in order to justify him in rendering assistance. A general call by an officer for assistance in arresting a fleeing criminal not only may, but ought to be responded to by all persons within sound of his voice, who are physically able to render him aid, and aid should be rendered promptly, without stopping for information as to the crime which has been committed. The line of testimony which was objected to was, in our opinion, clearly competent. By the one hundred and sixth section of our Crimes act (*Pamph. L.* 1898, *p.* 824), anyone who kills a private person endeavoring to apprehend a criminal, knowing the intention with which such private person interposes, is guilty of murder. In order to bring the defendant within the condemnation of this statute the state was required to prove three things—*first,* that the defendant was a criminal; *second,* that Janowski was endeavoring to apprehend him when the defendant shot him, and *third,* that the defendant then knew the purpose with which Janowski interposed. Proof of the defendant's burglarious entry into the Hotel Manhattan, and his theft while there, was competent to show that he was a criminal at the time when he shot Janowski. Proof of the raising of the hue and cry; of the firing of the shots in close proximity to the Bartlett inn; of the coming onto the street of Janowski immediately afterward; of the cries of the officers "Catch the thief," or "Catch the man," uttered when they were within ten or twenty feet of Janowski, and of the subsequent joining of Janowski in the pursuit, was competent for the purpose of showing the latter's intention in following and overtaking the defendant. Most of it was also competent for the purpose of showing that the defendant knew what Janowski's intention was at the time when he shot him down.

The portion of the charge to the jury which is made the subject of criticism by counsel for the defendant is as follows: "You will have little difficulty in determining that a

crime had been committed, and that the deceased was trying to apprehend a criminal. There is evidence in the case from which you may find that the police frequently called upon the citizens, who gradually made up a crowd and joined in the pursuit, to 'Catch that man' who was fleeing from them. And also there is evidence in the case from which you may find, if you believe it, that in passing Bartlett inn these officers repeated their commands to 'Catch that man,' and that a fellow-barkeeper of Janowski, the deceased, heard the shots that were fired as the crowd was passing the inn, and went out, and that the deceased went out with him, and that the fellow-barkeeper heard the cries of the police to 'Catch that man,' and that the deceased was then near to his fellow-barkeeper and outside of the Bartlett inn. You may, from this evidence, find that the deceased also was acquainted with the commands of the police to catch this man, and joined in the pursuit, and was endeavoring to arrest the defendant." The objection made to this excerpt from the charge is that it practically took from the consideration of the jury the question whether Janowski had knowledge of the crime of the defendant, and was endeavoring to apprehend him. We have already pointed out that the question whether Janowski had knowledge of the particular crime which the defendant had committed was non-essential in determining whether the latter was guilty or innocent of the crime for which he was being tried, and it was, for this reason, not a question for the jury's consideration. Whether Janowski was endeavoring to arrest the defendant when the latter stopped him, was, of course, a vital question to be determined by the jury, but we do not consider that the trial court, by this portion of its charge, usurped the function of the jury, and took upon itself the decision of it. What was said was the expression of the view of the court as to the conclusion which ought to be drawn from the testimony as to the intention with which Janowski followed the defendant. The propriety of such judicial action is entirely settled in this state, as will appear from the following citations from former decisions in this court. "That a judge has a right to give his own views to the jury with

respect to the value of the testimony, or upon the merits of the case, is, and always has been, the law of this state." *Smith & Bennett* v. *State,* 12 *Vroom* 370, 374. "Under our system of jurisprudence a trial judge is not only justified in pointing out to the jury what seem to him to be the salient features of the case, but it is always his right, and, frequently, his duty, to go further, and give the jury the benefit of his greater experience by telling them how the testimony strikes his mind, both as to its force and as to the inferences he would draw from it." *State* v. *Hummer,* 44 *Id.* 714; *State* v. *Schuyler,* 46 *Id.* 487.

It is further insisted that in this excerpt the trial judge "misquoted to the prejudice of the defendant the testimony of Coates, the fellow-bartender of the deceased, that the deceased was standing close to him when he (the witness) heard shouts 'Catch that man.'" All that it is necessary to say, in disposing of this contention, is that the trial judge, in this part of his charge, did not profess to *quote* from the testimony of Coates, or of any other witness, but stated *that there was evidence in the case* from which the jury might find that the deceased was near to Coates at the time when the latter heard the cries of the police, and further, that an examination of the case disclosed an abundance of evidence from which the jury might have found that the deceased was near enough to Coates to hear the cries of the police which Coates heard, and this was the point which the trial court was attempting to impress upon the minds of the jurors.

The only other assignment of error argued by counsel for the defendant is that the trial judge erred in not charging the jury that there was no evidence that the deceased knew that any crime had been committed, or that he was making an effort to apprehend a criminal. It is only necessary to say, in disposing of this assignment, that no request for such an instruction was submitted to the court. It may be added that had such an instruction been asked it would have been properly refused as being without justification under the facts proved.

The conviction of the defendant will be affirmed.

For affirmance—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, J.J. 14.

For reversal—None.